The court will take a break after this case. May it please the court, Peter Abrahams for defendant and appellant Karen Castro and for defendants in Cross Appelese County of Alameda and Joan Henson. I'd like to, given the cross appeal, I would like to try, if I can, to reserve approximately 10 minutes for rebuttal. I want to concentrate my argument this morning on the issue of qualified immunity, the doctrine that protects public officials from reasonable mistakes. Although I don't believe that there was a constitutional violation at all in this case, I believe that particularly in light of this court's recent case of Fogle v. Collins, of which I sent a letter to the court regarding that decision, it's beyond dispute that the rights that Ms. Frenette contends were violated were not clearly established at the appropriate level of specificity required by the United States Supreme Court in Saussure v. Katz. That is, regardless of whether the rights were established as a general proposition, it would not have been clear to a reasonable social worker that her conduct was unlawful in the particular situation that Ms. Castro confronted. As this court explained in Fogle, the focus must be on the precise circumstances of the particular case, as well as the state of the law at the time of the particular violation. Thus, although the facts of already decided cases do not have to match precisely the facts with which the social worker is confronted, this court stated in Fogle there must be some parallel or comparable factual situation to alert, in this case, the social worker, that a series of actions were violated. And what part of the law, not the facts yet, but what part of the law do you contend was not sufficiently clear in this case? Well, it was clearly established that a social worker cannot remove a child without a prior court approval if there are emergency circumstances. I don't believe the law is at all clear. Unless there are emergency circumstances. Unless there are emergency circumstances. So that law is clear. That as a general proposition, just as that a police officer can arrest somebody without probable cause. So what you're focusing on is, was it or should it have been clear that there were or were not emergency circumstances? So it's the factual proposition that's in your mind sufficiently unclear that there's a qualified immunity? Yes, I think the law as to what constitutes an emergency circumstance under the particular facts of this case was not sufficiently clear. There were no comparable cases. Rather, I think the case is, if you look at the. But the question of whether this was or was not an emergency, that went to the jury, right? That went to an emergency. That went to the jury, yes. And so the jury decided one way or the other as to whether or not there was an emergency that justified. And the jury was also instructed as to qualified immunity, correct? I don't believe they were, and I don't believe they should have been, because qualified immunity, as we've explained in the briefs, is reviewed de novo as a question of law, as to whether the law is clearly established or not. But the jury does get to decide what the facts are. The jury gets to decide what the facts are. I don't disagree with that, Your Honor. But if we look at all the cases available to Ms. Castro at the time that she made this decision, we have the Wallace case. And in that case, this court found there was no emergency circumstance where this police officer has removed children based solely upon a statement, a bizarre statement, by an institutionalized mental patient with a history of delusions. There was the RAM case where a social worker removed children based on two-year-old allegations that had already been investigated and found not to be supported. There was the Calabrita v. Floyd case where a social worker, after initial report of hearing a neighbor complain that an anonymous report by a neighbor that she heard on one occasion a child shouting in the middle of the night, no, daddy, no, the social worker then waited 14 days before entering the home to remove the child. We have the Mabee case where you had a 14-year-old girl as opposed to a 4-year-old girl. The report of abuse was about a month before the social worker attempted to take away the child. And there was no dispute that the abuse that had been the subject of the complaint had not recurred since that time. One of the things I want to point about Mabee is that Plaintiff's Counsel has argued that Mabee establishes that whenever there's a sufficient time to obtain a warrant, that ipso facto establishes... Here's what troubles me about this case on this issue from your standpoint. There's evidence in the record that the county of Alameda, at least during the relevant time period, I don't know what they're now doing, but during the relevant time period, they just never went for warrants ever, period. Now you're talking about the Monell issue. Well, but I'm also talking about the issue of what was in Ms. Castro's head as she orders the seizure of the child and putting her into protective care. That is to say, as far as I can tell, there was plenty of evidence from which the jury could have determined that Ms. Castro made no determination at all in her own head as to whether or not there was an emergency, because she didn't think she needed to. No, I don't believe that's the case, Your Honor. The written policy of the county of Alameda was not to remove a child without a prior court order unless there was an emergency. Right, and as I gather from the record, there was evidence that there had never been an emergency, that there had never been a non-emergency in, what, three years? Well, the policy of the county was you only remove a child without a court order if there's an emergency. If there's not an emergency, you don't remove the child. You file an out-of-custody petition with the juvenile court. That's the uncontradicted evidence. In fact, if there was a widespread policy to never to get a warrant in any circumstance, you would have more than the two lawsuits or possibly three lawsuits over a five-year period that Plaintiffs' Counsel has cited to. So I don't think there's any evidence that would support inference that the county is, in fact, just left and right taking children away in non-emergency situations. Does the jury have the right in this case, once it's been instructed as to what qualified immunity means, does the jury have the right to decide whether or not, given the, I don't know whether it's a, it's probably a tape, but I've got it on a disc, of the interview with Sage as to, you know, the touching and so on and all the other circumstances, does the jury have the right to decide whether or not that constitutes an emergency? As a matter of first instance, the jury can decide as a question of fact. This court can review to determine whether there's any substantial evidence to support the jury's finding that there was no emergency. I believe, as we explained in the brief, that the evidence only supports one conclusion, that there was an emergency. So I'm only sure we're on the same page now. Excuse me, excuse me. I want to make sure we're on the same page, and that is to say the jury had the right to decide whether or not it was an emergency. The jury, having decided that it was not an emergency, we can reverse that determination only upon showing that there's not enough evidence to support that? That's correct. But the issue of qualified immunity, whether Castro made, you know, assuming an arguendo that the court concludes that there's sufficient evidence to support the jury's finding that there was not an emergency, this court still has to determine as a question of law whether the law was clearly established under the particular circumstances of this case. Whether no reasonable person could have thought it was an emergency. Whether, you know, this court could only hold that there was no qualified immunity if no reasonable social worker could find that there was an emergency situation in that case. And I mentioned all the cases which had found non-emergency situations, and I believe that those facts are, you know, totally different than the facts faced by Ms. Castro. On the other hand, there's this court's case decision in Baker v. Rokensky where social workers removed a child, a five-year-old child, I believe under less information that Castro had at the time that she made the decision. They placed the decision to remove the child solely upon the fact that a neighbor's parent had complained that the child's father had molested the neighbor's children, and then when the police interviewed the child, the child denied that his father had molested him, but the police officers believed that the child's denials were evasive. And this court held that it was proper to remove the child and keep the child away from even the mother, even though the father at that point was in jail because the social workers could reasonably be concerned that the mother, even though the father was in jail, would not protect the child. So this is the context that faced Castro or any reasonable social worker at that time. You had on the one hand you had the Wallace, the Ram, the Calabrita cases, which would indicate these facts don't establish an emergency situation. You have on the other hand the Baker case, which held there was no constitutional violation in that case. But the facts that were confronting Ms. Castro were that Sage at the time was in the custody of her mother, and the mother was not the abuser if indeed there was an abuser. It was not the mother who was the abuser. No, she was not the abuser. There was concern that she was not sufficiently protecting the child, though. For instance, on August 6th, the Sage's therapist made a report to the Child Protective Services in which she stated that Sage was suffering from red and irritated genitals, and that the therapist had advised Sage's mother to take the child to a doctor and have her examined immediately. This was on the 6th that the report was made, so the statement to the mother was probably made several days before that. However, it was only after a great deal of hectoring by Ms. Castro that Ms. Frenette finally agreed to take the child to a doctor on the 14th, and that was the time of the Calico interview. And by that time, you had all this additional information available to Castro, including her conversations with Sage's schoolteacher, who described highly sexualized behavior consistent with abuse. How long would it have taken after that interview with Sage to obtain a warrant? I don't think it would have taken more than 48 hours. There's no dispute about that. My position is that the question is facing all of the information facing Ms. Castro, whether the law was clearly established that she had, simply because it was time to get a warrant, that it was inappropriate and there was not an emergency situation. I don't believe the state of the law at that time would have alerted her to that fact. As the United States Supreme Court stated in the Brousseau case, which we cited in our brief, that the law is not clearly established if the area is one in which the result depends very much on the facts of each case and no prior decision clearly governs the situation faced by the public official. I think it is clear that there is no prior decision that clearly governs the situation. I think the same analysis goes to the issue of the medical exam of Sage. At the time that Castro made the decision to have Sage examined, the only decision by this court that it found that a medical exam without prior approval by a court was unconstitutional was the Wallace case, and in that case, once again, there was no allegation of prior abuse. So clearly the law was not clearly established. You've got two different issues. One is the seizure and the other one is the subsequent medical exam. Yes. I don't think the law was clearly established in either case because there was no case that held under identical or even comparable facts that there was a constitutional violation in those situations. I'd like to reserve the balance of my time for rebuttal unless the court has any further questions. We'll save them for you when you come back up. Good morning. I'm Frances Kaminer. I represent Jennifer Furnett, the mother whose 4-year-old daughter and 7-year-old son, Zachary, were seized from her custody without a warrant and held in foster homes for two months after that. The issue that the county and Karen Castro have brought before the court is whether the jury, as a matter of law, when deciding their special verdicts, was wrong for deciding that Karen Castro, when she removed Jennifer Furnett from the custody of her mother, did not have reasonable cause to believe that Sage was in imminent danger or that Zach was in imminent danger of any kind of serious physical harm. And that jury also specially decided that no reasonable social worker or a reasonable social worker would have thought that her actions in removing the children were unlawful. The jury also ---- How does the jury make that determination? The problem is that it calls for a fairly in-depth evaluation of what the state of the law is and the training and knowledge of an individual social worker. I assume that the jury was not given a primer on the law of qualified immunity in making that determination, were they? The jury was given a milieu of jury instructions which set forth what constitutional rights were applicable to this case. The right of family association, the right of families to ---- of integrity to be free of government interference except in the cases of emergencies. There were ---- I can understand the factual question of exigent circumstances. I'm having a harder time trying to figure out what the appropriate role of a jury is in ruling as a matter of law whether an official is entitled to immunity, whether it be qualified or absolute. That seems to me to be the role of the court. The jury wasn't asked to decide whether the law was clearly established. The court decided that. And in fact, the law that protected Jennifer Frenette from having her children summarily removed from her custody was clearly established. Is there anything wrong procedurally with the judge waiting until after the jury returns its verdict in order to decide the qualified immunity question? The case was brought to the judge at the time of summary judgment. Well, I'm asking a different question, and maybe this goes to the question of punitive damages, because it seemed to me that what happened here was that Judge Jenkins, after hearing the testimony at the trial, made a determination as to whether or not Ms. Castro acted, you know, in such a way as to trigger an entitlement to punitive damages. And I guess my question with regard to qualified immunity is really the same. Is there anything wrong with the district court waiting until after the trial in order to decide, after hearing the testimony and obtaining the jury's verdict, whether or not immunity should attach? I don't believe that the court – I didn't understand the court, to me, making a decision that qualified immunity didn't attach until after the trial. The court let this case go to the jury because the first two prongs of qualified immunity determinations were legally determined to exist. There was a constitutional right in question, the right of family integrity as to the medical exam, the right of parents to make important medical decisions on behalf of their children without the protection against investigatory examinations, medical examinations at the behest of the government, except in cases of an emergency or parental consent or a court order. Now, maybe this will help us. Maybe not. But I hope it will. The judge determines whether the law is clearly established. And the law, as determined by the judge, is you cannot take a child and put the child in custody without a warrant unless there is an emergency. That's the law. Then that's clear. The question is, was there an emergency? And then you break that down, and the jury, for purposes of qualified immunity, has to decide, number one, there was not an emergency, and, number two, no reasonable social worker could have concluded that there was an emergency. And that's factual determination for the jury, so I assume that the jury is perfectly entitled, if properly instructed, if, for example, there's a little boy who pulls the pigtail of the girl in front of him and puts it in the inkwell. If that boy is based only on that evidence, placed in protective custody without a warrant, I assume the jury is perfectly entitled to conclude that no reasonable social worker would have found an emergency constituting child abuse requiring to go without a warrant. So, I mean, the question is, how obvious is it that there was no emergency? So the question really is, is there enough evidence in the record to support a jury conclusion, not only that there was an emergency, but that no reasonable social worker could have found an emergency? All right. The record is replete with evidence that there was no emergency. Let me ask you. It is a question of fact. Yes. Let me ask you that, because that gets to the heart of my issues. What were the disputed facts that the jury needed to find in order to allow someone to come to the conclusion it was not an emergency? What were the disputed facts that needed to be sent to the jury, or were they all undisputed facts? They were not all undisputed facts, but some of the facts that favored the plaintiff and inferences can be drawn in favor of the plaintiff were actually presented by the defendants on cross-examination. But if we have a jury deciding whether it was an emergency or not, how do we get consistency in the law? Because every jury is going to have a different view as to what is an emergency. Isn't that the duty of the court to make the legal conclusion of whether there was an emergency? No. Whether the social workers acts were reasonable when there are disputed facts is a question for the jury, and this Court has said that that is the case in Wallace v. Spencer. If not, then every question where qualified immunity comes up becomes a question for a court as opposed to a jury, and that is not the case. In this case, Karen Tasker testified that she knew the law required her to get a warrant when there was no emergency situation. She knew that the father, who lived in a different city and was divorced from the judge. Can you answer Judge Dawson's question? I'm still waiting to hear your checklist of undisputed facts that the jury had to decide. I thought it was disputed facts. Am I correct? Sorry, disputed facts, yes. Yes. But what were those disputed facts? I'm trying to go down a list of facts that provided substantial evidence upon which the jury. That's not the question you're asked. The question is what were the disputed facts that the jury was asked to resolve? We know they resolved them in your favor, but what were the disputes? The disputed facts were whether Jennifer was able to care for her children and properly protect them. Jennifer provided evidence, the plaintiff introduced evidence to show that Jennifer was a competent and caring mother who took good care of her children. Now you're arguing for your side again. We just want a list of what the disputed facts were that the jury had to resolve. You've given us one, the fitness of the mother to care for the children. What's the next disputed fact that the jury had to resolve? Whether there were alternatives to removing the children from their parents, from their mother, whether the father posed an immediate danger to the child when, in fact, he wasn't going to see them until two days later, whether there were ways to prevent the father from seeing the child ever, whether Jennifer was willing to prevent the father from seeing the child and, in fact, presented evidence that, in fact, she would have, that was disputed by the defendants, whether there was any evidence of danger to Zachary at any time, and whether or not Castro could get a warrant in the time it would take to protect the children from what Castro perceived as a danger rather than an emergency. Would you include in this one? I'm not trying to give you a softball in which you're supposed to say, oh, yes, I would include it. I'm puzzling over this one. We have the CD that shows us the interview that takes place between Sage and the questioner. Is it included within disputed questions of fact what the jury is supposed to understand as to whether or not that child is reporting behavior that is sexual abuse? I mean, the interpretation of that interview, in other words, is that free to the jury to interpret? Well, it is. And the fact is, having viewed the tape many times, I can't believe that any reasonable person would think that that child was disclosing sexual abuse in that interview, certainly not a reasonable social worker who's been trained to understand when, in fact, someone is disclosing sexual abuse. But furthermore, the jury was given the benefit of expert testimony as to the significance of the interview. A doctor was presented on behalf of the defendants and also on behalf of the plaintiffs, and the jury listened to their testimony. Okay. So we had, in a way, disputed, experts disputing as to the interpretation to be attached to that interview. That's correct. And as to punitive damages, the jury did make a decision in special verdict forms that are in the excerpts of record that, in fact, Karen Castro's bad acts warranted an award of punitive damages. And there were numerous facts presented by plaintiff that were disputed by defendants that a reasonable jury could base a decision that there was substantial evidence to support an award of punitive damages. Those include Castro took the children away from the mother when she knew that the father, who didn't live with the mother, lived in a separate city. She didn't interview any family member personally before seizing the children. She didn't even interview the mother before taking the children. And the mother was right there at the Calico Center. She knew nothing about Zachary, who just happened to be there because mother brought him along, thinking perhaps they want to ask my little boy questions, he might be a And she gratuitously sees Zachary. Now, wasn't there something in the record that indicated Zachary had been abused by someone else at an earlier time and that the social worker was aware of that? When Zachary was 4 years old, which was 3 years earlier, Zachary had been improperly touched by another little boy. Karen Castro had access and did have the records that indicated that both Ms. Frenette and the father acted appropriately and protectively. The case went no further, and Zachary was fine. Ms. Frenette, when she found out about the incident, which had occurred at someone else's house when she wasn't present, reported it to the director of the child's preschool, the same director of the preschool that testified in this case. And it was Ms. Woodward, the director, who made the report to CPS. CPS, in their investigation, learned about everything about father's background and mother thought that the parents were protective and the child stayed with the parents. Let me ask you this in terms of just legal standard. For the qualified immunity determination, it's an objective standard. We don't look to subjective motivation on the part of Ms. Castro. So what she might herself have thought doesn't really matter. What matters is what a reasonable social worker would have thought. Correct. On the other hand, punitive damages is subjective. It is what was in her head. And so that one is subjective. Yes, it is. Does that do something? Where I'm headed with this is I'm inclined to think that Judge Jenkins might have been right to leave the damage award for compensatory damages, despite the qualified immunity determination, to leave that award alone. But when he's looking at subjective motivation for punitive damages that is not necessarily inconsistent for him to have found insufficient evidence to support a verdict of punitive damages because that one's a subjective determination. Yes, that's correct, but I disagree. I think that there is evidence of subjective actions on the part of Ms. Castro that justify an award of punitive damages. For instance, she claimed that she took Sage because she thought there would be a medical emergency, but she gave information to the shelter care people that was incorporated in a form that went to the jury that, in fact, Sage was in good health, no injuries. In her official report, the investigative narrative, she portrays Mother as a bad and uncaring and incompetent mother. This is a report that will go to the next social worker and the juvenile court, which will make a decision whether these children remain in custody. However, in her own personal journal, which remains within the agency and doesn't go to the court, she portrayed Mother in a much more neutral light without using pejorative terms. And in her investigative narrative, she misrepresented what the witnesses told her. She indicated that she misrepresented Carrie Woodward. She misrepresented Teresa Jacobs, the therapist. The fact is the jury didn't have to believe what Karen Castro said. They could have concluded that, in fact, she wrote these very nasty things in her report, which was going to be relied upon by higher authority, because she knew the case was justified, and that she was bolstering her decision by writing this report because she knew that she had not adequately investigated the matter before taking such drastic action. That is a very serious thing. She took these children from their mother. Roberts. The amicus brief that was filed in this case alerts the court to the concern that social workers have generally, that if we are not careful in the development of the law in this area, that the end result may well be a reluctance on the part of social workers to remove children who are at risk from families they should be removed from, because they're going to be so concerned about protecting their own civil liability that they will hesitate to act. What's your response to the amicus brief? Punitive damages serve a dual purpose. They are not there to punish social workers who follow the law and do their job. They are there to punish Karen Castro because the jury perceived that she, in fact, intentionally violated the law and behaved maliciously by portraying the mother as a bad mother and trying to justify her actions in taking the children. What is more, the punitive damages are to deter future acts by Karen Castro and others like her, the people who rallied around to support her, the witnesses for the county. The fact is Karen Castro did not have punitive damages awarded against her because she made a mistake, and it is only a social worker who intentionally violates the law and behaves cavalierly and maliciously who has to worry about punitive damages. If you get a warrant in good faith, you won't even have a compensatory damage award against you, no less punitive damages. Now, your time has almost run, and we've not yet got to the Manel question. To me, the Manel question is relevant not just to what our ultimate decision is, but also to the punitive damages question. It seems to me, and I'm speaking only for myself, that Judge Jenkins might have made a mistake with respect to Manel liability. It seemed to me that there was a fair amount of evidence in the record in front of the jury that the county of Alameda is not training its people properly, and he denied summary judgment to them, but then he takes it away from them after the very evidence that leads him not to grant summary judgment. The evidence hasn't changed much when it comes into trial, but then he takes it away. What bothers me about this, well, one of the things that bothers me about this case is it seems to me that the evidence was pretty clear, if the jury chose to believe it, that the county of Alameda is not properly trained its social workers with respect to what an emergency means and when you need to get a warrant and so on. But if I follow that along, that may protect Ms. Castro from punitive damages to some extent because the problem may then be lack of training. I understand the Court's point, but I do see it differently in this particular case. It might be different for a different social worker, but Ms. Castro testified that she knew the law required her to get a warrant and that she knew she had time to get a warrant. She did testify that she herself was not trained on how to get a warrant, but that she knew that she could get a police officer to assist her in getting a warrant, and there were two police officers right there, the San Leandro police officers, who would have been able to assist her in applying to a neutral and detached magistrate to get that warrant, and she knew she could do that, and she didn't. Okay. Further questions from the bench? Thank you very much. Thank you, Your Honor. In regard to the punitive damages, well, first let me go back to the issue of disputed questions of fact, and not by the jury, because in order for anyone whether... What do you mean, it has to be a decision for the Court? Pardon? Excuse me? You said it has to be a decision for the Court. Qualified immunity. The issue of qualified immunity, whether the law was clearly established under the particular circumstances of this case. But you can't mean that the jury can't resolve disputed questions of fact that go to the question of qualified immunity. No, I don't disagree with that, if there's a disputed question of fact. But in order for anyone, whether the jury clearly cannot decide whether the law is clearly established, because the only way anyone can do that is to review all of the case law that has come down prior to the social worker acting. You know, this would require the jury to be aware of the Wallace case and the Mabee case and the Calabrita case and the Baker case. Obviously, that's not something for the jury to decide. That's for a Court to decide whether those cases established that the law was clearly established under the particular circumstances faced by Ms. Castro. So it's clearly a legal question, and it's reviewed de novo by this Court. I think if I take what you are saying to its logical extreme, we can never have a jury deciding a question of disputed fact, the resolution of which will lead us to determine whether or not there's qualified immunity, because you're saying, well, the jury can't resolve that question and then apply it unless it's read all the case law. No, you're right. That's not what I'm saying, Your Honor, because if there's a question as to what Castro knew, what were the facts, the jury can decide what Castro knew, if there's a dispute about that. But once you take the jury's determination about what Castro knew, then you have to say, in light of the existing case law, was the law clearly established that there were exigent circumstances that allowed Castro to remove the child without a prior court order? Once the jury has decided what the facts are, then this Court has to decide whether the existing case law would put a reasonable social worker on notice that her actions were unconstitutional. Let me come to the question of that interview as to which we had expert testimony on both sides. In your view, does the jury have the right within its responsibility to attach its interpretation as to whether or not that's evidence of an emergency? I think the jury can decide. Well, in my opinion, as a general proposition, a jury could. In my opinion, under the particular facts of this case, it was undisputed. The child said very specifically that her father touched her on her vagina and her bottom and that it hurt, and that she touches herself on her vagina all the time and it hurts. I understand that, but I'm asking a different question, and that is, can the jury decide as part of its responsibility to resolve disputes or interpretations? Can it resolve, as it were, the battle of the experts and decide that this either was or was not or was ambiguous evidence as to sexual abuse? I think if there was substantial evidence that would allow a jury to conclude it was ambiguous, then it would be a jury question. In my mind, having viewed the tape myself, I don't believe it's ambiguous. I think that it would cause any reasonable person to be highly concerned. If that's the case, why did the deputy district attorney, who also viewed the tape, ask for the evaluation by sex abuse investigators as to whether or not they thought it was sufficient? Well, I don't believe that's the record, Your Honor. The assistant district attorney who specialized in child abuse cases viewed the interview along with Ms. Castro, and at the conclusion of the interview said to Ms. Castro that she believed that the child should be removed for her own safety. Ms. Castro then made the decision to have the child examined in order to determine whether there was evidence of sexual abuse as well as whether she was suffering from a bladder or urinary tract infection. I don't believe the district attorney said anything one way or the other about that. Again, Mr. Rucker, could you address the punitive damages? Yes. The punitive damages, I mean, even assuming for the sake of argument that Castro violated a clearly established right, I don't think there's any evidence that she was motivated by anything other than her belief, whether you believe it's reasonable or not, that it was necessary to remove the children to protect them for their own safety. There's certainly no evidence that would meet the standard of punitive damages, no evidence that she acted out of an evil motive or intent or with reckless or callous indifference to Frenette's rights. The statement, well, she didn't interview Ms. Frenette before she removed the child. Well, she did interview her by phone. Now, you can argue about whether she should have asked more questions or met her face-to-face, but you have to look at the totality of the situation. The primary, and I brought this up with me because the primary argument that I see that Frenette's counsel has made as to why there was evidence of malice that should go to the jury is so-called discrepancies between the investigative narrative and the delivered service log. And if you look, it's in the record. The investigative narrative starts at page 454. It's a five-page single-space document with detailed recitations of everything that happened. The delivered service log is two pages, but if you look at it, it's actually really only one page because you have these black spaces, which obviously couldn't be written in. So the delivered service log is nothing more than a page citation on that one. Pardon me? Delivered service log. The page number? Yeah, that you were just pointing to. It starts at page 362 of the excerpts of record. And the delivered service log is just a very short summary of all of Castro's contents. And what plaintiffs are arguing is that simply because there was more detail and additional facts in the investigative narrative and slightly different wording, that somehow or other that's substantial evidence of an evil motive by Castro. And I think that argument simply won't fly. As to the Manal issue, the only argument that I see, the argument as well, the county didn't train social workers to obtain a warrant. It's clear the uncontradicted evidence is that the county's written policy was not to remove a child without a warrant, absent exigent circumstances. The complaint that plaintiffs have made is that there was kind of no middle ground, that you either only removed a child in emergency circumstances or you didn't remove them at all, you filed an out-of-custody petition. You can argue maybe that's not a wise policy. But the point here is whether or not the judge was justified in taking that question away from the jury. It seems to me that there's plenty of evidence in there from which the jury could have concluded, could have, that there was a failure to train. Well, the failure to train doesn't matter if the policy is to only remove a child in emergency circumstances, does it? Well, it's a failure to train and that the policy, in fact, as stated, was not in fact what the operational policy was. The operational policy was if it's not an emergency situation, you file an out-of-custody petition. But the jury obviously concluded in this very case that it wasn't an emergency. As a matter of fact, I don't believe the evidence supports that, and in any event disqualified immunity. I have one additional question, if I can. No, take as long as you like. The information I have doesn't disclose the days of the week that all of this took place. Do you know whether the weekend factored into the decision on whether to remove without a warrant? That is, if it was made on a Friday and Castro decided, well, you know, the judges are all gone on Friday and I won't be able to get a warrant in 48 hours, which is taking the weekend out is when the child would be back with the father or the children would be back with the father again. I believe the removal was on a Tuesday. So certainly that didn't factor into any of it. Tuesday or the 14th of August? It was either a Monday or a Tuesday. I believe it was a Tuesday. I mean, the calendar will tell me whether I'm correct or not. My recollection is that Sage was taken by Castro to the doctor for a medical examination on Friday the 17th, three days later. The children were removed on the 14th. Sage was examined the very next day. Castro tried to make an appointment the afternoon of the 14th and couldn't make one, so she had her examined on the 15th. That's my understanding. Okay. Thank you. The case of Frannert v. County of Alameda Social Service Agency is now submitted for decision. Thank both sides for their very useful argument. The Court will now take a ten-minute break, after which we'll come back and hear the last two cases on the argument.
judges: Fletcher, Tallman, Dawson